Good morning. May it please the Court, Deputy Attorney General Renika George, on behalf of Appellants, I would like to reserve five minutes for rebuttal. This Court should reverse the District Court's order for the following two reasons. First, Appellants' regulation of California biohazardous waste generated by California health care facilities, collected and stored in California at a medical waste treatment facility, and transported and disposed of by Daniels, a California-permitted entity, does not constitute regulation of commerce occurring wholly outside of the State. Second, Appellants are not liable in their individual capacities for approximately $1.3 million when they were not on notice that their particular actions were unconstitutional. When undergoing a qualified immunity analysis, the Supreme Court has cautioned against defining clearly established law at high levels of generality, but rather it's whether the violative nature of the particular conduct is clearly established. Turning first to the question of extraterritoriality, Daniels has extended the reach of extraterritoriality as applied to the particular circumstances, in this case, beyond the limited scope established by precedent. Generally, courts have found extraterritorial reach when regulating States control sales in other States' markets or when regulating States require a change in other States' laws. This law, the Medical Waste Act, requires neither. The Medical Waste Act does not control prices or sales in other States. For instance, Daniels could dispose of another State's waste in a manner not permitted by the California Medical Waste Act. And secondly, the Medical Waste Act does not require States to adopt California's medical waste disposal requirements. For instance, Daniels could dispose of California's biohazardous medical waste in a State that itself does not impose requirements on its own waste. You would agree that under the laws of Kentucky, this incineration was lawful, correct? Yes, in the sense that Kentucky did not have requirements that its own waste be disposed of in a manner that complied with California's Medical Waste Act. And so how does the incineration of waste in Kentucky affect the residents of California? Well, California's interest is that California has, in enacting the Medical Waste Act, California has decided to take responsibility for the public hazards of highly biohazardous waste. And that would be perfectly legitimate if this incinerator were in California. Correct. But California has adopted an even-handed approach to how it deals with its own waste, in that the waste must be incinerated, whether it's in California or whether it goes outside of the State. California doesn't have an interest in how Kentucky handles its own waste, but it continues to retain an interest in its own waste, in California's own waste. Well, really, isn't this a disguised attempt to regulate the environmental laws of other states? Respectfully, no. This is — California is merely taking responsibility for the public health hazards that are associated with its own waste. And it comports with California's cradle-to-grave approach of dealing with its own waste, which means that California is monitoring and tracking its waste from the moment that it is generated by California health care facilities in California to the end disposal. And this includes monitoring and tracking how the waste is generated, where it's generated, how it's picked up and collected by entities, California-permitted entities like SharpSmart, and then, finally, when it's disposed of. If we look at BMW v. Gore, how do you square this case with that? Because the Supreme Court said there Alabama does not have the power to punish BMW for conduct that was lawful where it occurred and has no impact on Alabama or its residents. Here, you're punishing this corporation, plainly, and it would seem that the incineration in Kentucky would have no direct effect on the residents of California. Well, respectfully, it's a question of nexus. And the key inquiry here is whether or not the commerce that's being regulated occurred wholly out of the state. So in BMW v. Gore, Alabama was allowed to apply its disclosure requirements to the cars that were fixed outside of the state of Alabama but were then sold in Alabama. So here, looking at whether or not there's a nexus to the state of California, there clearly is. And this Court has recognized when services, such as the ones in this case, have nexus to the regulating states, the regulating state can impose conditions on the part of the performance that occurs outside of the state, and that does not violate the dormant commerce clause. So we're looking, if we're looking at the cases as a spectrum, and we have Valley Bank and GravQuick and S.D. Myers on one side and then Sam Francis on the other, and so the key inquiry is whether or not this was commerce that was occurring wholly out of the state and whether or not there was nexus to the state of California. Arguably, there is because this is California-generated waste by California health care facilities, and the waste is collected and stored in California and then transported and disposed of by a California-permitted entity. And the entire process is regulated and permitted by California and the Medical Waste Act. Counsel, Judge Gould, if I could interject a question, please. So how do you deal with the problem if Kentucky had a law that required waste incineration to be different than what California's waste incineration rule was? Well, California's Medical Waste Act does not require Kentucky to have a law that complies with the California Medical Waste Act, so in that way it does not affect how Kentucky would decide how to legislate, how to regulate their disposing of their own waste. In the instance where- But my question is if the waste is shipped to Kentucky and then it's incinerated in Kentucky, if Kentucky has a law that says don't incinerate waste, you know, ship it to the moon or something, like how do you deal with that? Well, in that instance the waste could not be disposed of in Kentucky, but the Dormant Commerce Clause doesn't protect specific operations of business. It's not violative of the Dormant Commerce Clause for some states not to be able to engage in business with California. So I'd like- Well, basically you're saying that California waste disposers can't do business in Kentucky. Yes, in this instance they could not do business. So why does it not affect Kentucky commerce? Because, again, the Dormant Commerce Clause doesn't protect- it's not violative of the Dormant Commerce Clause for one state to lose out business to another state competitor. We see that. This Court and courts have repeatedly emphasized that the Dormant Commerce Clause is not meant to protect a specific mode of business or operation. We see that in Exxon. We've seen that in National Association of Optometrists. So it's not- again, the key inquiry is whether or not this regulates wholly out-of-state commerce, and it does not because they're of the several nexus points to the state of California. Turning now to the question of qualified immunity, even assuming, arguendo, that appellants do not succeed on the first prong of qualified immunity, they are still entitled to the protection of qualified immunity. Appellants do succeed on the second prong, that an appellant, a reasonable official, would not have noticed that he or she was violating clearly established law. Appellants only need to succeed on one prong. Thus, regardless of this Court's determination on the applicability of the Dormant Commerce Clause to the Medical Waste Act, appellants are not liable in their individual capacities for approximately $1.3 million for following the dictates of statutory language and legislative intent. Appellants are not on notice for three reasons. First, as the Supreme Court held in White v. Pauley, existing precedent must have placed the constitutional question beyond debate. Here, the application of the extraterritoriality doctrine to the regulatory scheme at issue was not beyond debate. Again, looking at these cases in a spectrum, with Sam Francis on one end and Valley Bank and GravQuick and S.D. Myers on the other end, we see that the question of nexus and whether or not this is commerce that occurs wholly out of the state is not beyond constitutional debate. We know from Sam Francis that if there is no nexus, that then the state may be, the state law may have extraterritorial reach. But here, where there were sufficient nexus points, it's certainly not beyond debate that there was, that this was clearly established law as applied to the particular circumstances. Second, there is certainly no clearly established precedent that would put appellants on notice that their particular actions in enforcing the Medical Waste Act as to California's waste collected in California and disposed of by a California-permitted entity would be violative of the Dormant Commerce Clause. Again, as the Supreme Court has said in White v. Pauley, it's cautioned against defining clearly established law at a high level of generality. Rather, the question is whether the violative nature of the particular conduct is clearly established. Third, finally, there has been no judicial interpretation of the Medical Waste Act since its enactment 27 years ago. As this Court found in Porter v. Brown, where there hasn't been judicial interpretation on an issue of law, interpretation of an official is not unreasonable. Otherwise, officials are in this untenable position of having to determine whether there's a risk to a possible 1983 action for violating the Dormant Commerce Clause or failing to uphold California law. And I see that I'm down to four minutes now, so I'd like to reserve the rest of my time. Thank you. Roberts. Thank you, counsel. May it please the Court, Jason Levin for Appley, Daniels, and Sharpsmart. I think the Department has not fairly characterized the commerce at issue in this case. The commerce at issue is not the generation of waste in California. It is not the transportation of waste within California. The commerce at issue is a simple transaction that occurred in Kentucky and in Indiana. Daniels had medical waste. They went to a facility in Kentucky and said, we will pay you money if you take our medical waste and treat it consistent with the laws of Kentucky. They went to a facility in Indiana and said the same thing. Take our waste. Here's money. Treat it consistently with your permits and the laws of Indiana. That is the commercial transaction. And the issue before the Court, as a first-level analysis — And I gather the reason that you made that choice was it was less expensive. Absolutely. And the issue here to focus is, is that transaction, are those transactions wholly outside the State of California? Of course they are. The State of California has no police power, no local interest, no nexus in that transaction. Part of the Department's mistake here has been to focus on the Medical Waste Management Act as a whole. This is not a facial attack on the Medical Waste Management Act. In fact, nothing that arises out of this case will in any way affect the Act and its application in California. This is a focused, as-applied attack on the Department's effort to apply that Act in Indiana, in Kentucky, and outside of California. So now we can focus in on what the specific argument is that the Department has presented for why it believes it should be able to apply California law to commerce in Kentucky and Indiana. And the general legal position is that California law should follow California waste. The problem is there's no legal authority for that proposition, none whatsoever. In fact, the Supreme Court in 1994 in CNA-Carbone mentioned that a public entity's police powers end at its borders, and that generally speaking, given the long line, decades' worth of restrictions by the states on waste exports and that those restrictions on exports interfere with interstate commerce. The idea that California laws follow the wastes that Daniel stakes to Kentucky and Indiana hasn't been explicated at all by the Department. There hasn't been any authority from either this circuit or certainly from the Supreme Court that describes how that could both comply with and intersect with the Commerce Clause. Well, there are circumstances in which state laws do have extraterritorial effect because if you take fisheries, for example, and the actions in terms of fisheries happen offshore, but California regulates the business. So California's argument is, yeah, you can dispose the waste of wherever you want to, but we're going to fine you if you do it in a way we think is improper. What's wrong with that? There's nothing wrong with that, Your Honor. In fact, that would be within the state's police powers if it believed that the health, safety environment of California for Californians was impacted. For example, one could imagine a waste treatment facility on the border between Nevada and California, on the Nevada side. And California might say that the methods by which the waste is treated at that facility impacts Californians. There are similar arguments made in the Rocky Mountain v. Corey case about greenhouse gases and greenhouse gases emitted from other states, how they might impact Californians. With respect to these transactions, there has not been posited nor could there be any effect on California or Californians. And the absence of a police power in this case for the benefits of Californians, I think, is dispositive. So let's turn to qualified immunity. We don't have a controlling case. The Act hasn't been interpreted. Why should qualified immunity not apply in this case? So let's start with Your Honor's question about the Act not being interpreted. This lawsuit has nothing to do with what the Act says or doesn't say. We went through in our briefs and we explained how the Act clearly delineates between the export of waste to a foreign country, in which California law could apply, and exports to other states, in which case the only inquiry of the State was whether or not the receiving facility had a permit. But let's put that aside and go directly to the qualified immunity issue, which is what an ordinary reasonable official understand based upon the state of the law in this circuit, that they cannot apply California law extraterritoriality to Kentucky and Indiana and other states outside of California. And I'd like to start with the two primary cases from this circuit. And the first would be Rocky Mountain v. Corey. And I start with that case for the following reasons. First of all, it was in 2013, and the Court expressly recognized, both in CNA Carbone and in the Seventh Circuit case Myers, that States have in the past attempted to set a bar for environmental compliance that has run up against Commerce Clause challenges. But Rocky Mountain said that the extraterritoriality doctrine did not apply in those cases, specifically, I'm sorry, with respect to the greenhouse gas emissions statute in California, because it was a California statute intended to protect Californians. In fact, there have been a series of cases from the Ninth Circuit concerning shark fins and foie gras, where ultimately the extraterritorial effects of that statute did not win out and did not trigger the Dormant Commerce Clause, because it was the interests of Californians and California that was at stake. So Rocky Mountain recognized the principle that the Dormant Commerce Clause applies in environmental areas. It simply said this is a law, a fuel standard law, greenhouse gas emissions law to protect California and Californians. So a line has been drawn by the Ninth Circuit. And then we move to the en banc decision of this Court in San Francis. And this was in May 2015. This was several months before the Department acted and issued a $567,000 penalty against Daniels. And in that case, once again, this Court clearly recognized the extraterritoriality doctrine. The State cannot hack wholly outside the State and affect commerce. And in that particular case, the statute at issue dealt with a royalty that sellers of art would have to pay in transactions. And the Court recognized that the statute at issue through California would affect transactions wholly out of State. The Court posited a transaction where there was a piece of art in, let's say, New York, and it was sold to a buyer from another State outside of California, and that sales transaction took place outside of California. And the Court ruled correctly that that triggered the extraterritoriality doctrine and could not be upheld. So between these two cases in the Ninth Circuit, the Department should have known, would have known objectively that it cannot, under any set of facts, regulate Daniels' right to go to Kentucky and Indiana and to pay for waste treatment. But, in fact, as the district court found, the history of the extraterritoriality doctrine goes back much, much, much further. It starts really with Edgar v. Might. I believe that was in 1982. And this was a case that had nothing to do with pricing. It had to do with the State of Illinois's effort to prohibit stock tender offers when there was a certain number of shareholders that might be impacted in Illinois. And there the Court noted that that had an extraterritorial effect that would violate the Dormant Commerce Clause because the maker of the tender offer was therefore being restricted and regulated from entering into stock transactions that might not have anything to do with Illinois citizens. Then the district court, as well as this court in Rocky Union, actually had a very nice history of the application of the Dormant Commerce Clause in these kinds of cases. There was the Brown-Forman case and the Healy case. These were both price affirmation statutes where the courts facially struck down efforts of one State that would affect pricing and sales occurring in an entirely different State. Now, throughout these cases, there is an unblemished recognition of the extraterritoriality doctrine in many different contexts. And there is not a single case. It's such cool to interject here. How do you deal with the Supreme Court's authority that a clearly established law cannot be established at a high level of generality? Your Honor, I think in this way, the idea that a State cannot regulate outside its borders is not at a high level of generality. I think that in this particular case, the rule has implied in every single context pricing, price affirmation, tender offers, environmental settings. It's been recognized in every single setting. I don't believe that the Supreme Court would require a case specific to the Medical Waste Management Act or medical waste specifically. And I think that for a second reason as well. The cases recently from the Supreme Court that say that qualified immunity should apply unless there is a case at a more specific level of application arises in many of these cases are excessive force cases. And other cases where you have State officers who are acting at a blink of an eye. They've got to make quick, fast decisions. They've got to balance risks and benefits of carrying forth their police powers as they see fit. And under that set of facts, it absolutely makes sense to require a level of specificity so that the officials know exactly where they stand before they carry out their duties. It's far removed from that set of facts that we have here where we have the Department under no time pressure whatsoever and having the complete ability to take a measure of the law nationwide in the Circuit and the Supreme Court to determine whether or not their specific set of facts falls within this general principle of law that, as I've said, has been applied in each and every setting, where, in fact, there has been a commercial transaction entirely outside the State. To the extent that there's any disagreement about the extraterritoriality of the doctrine, it's not does it apply or when does it apply. It just triggers a question as to whether or not a statute in question really is extraterritorial or not. And Rocky Mountain is the best example of that. There was lots of back and forth on whether or not an en banc review should be granted based on whether or not, in fact, this California statute on the carbon content of fuels really did or did not affect transactions wholly outside of California. In this particular case, in Healy, in Brown-Forman, in Edgar v. Might, in Sam Francis, that was beyond reproach. There was no question that those transactions were outside of California. And I would just point out, as one of my final comments here, that there has not been a single case cited from any court in any jurisdiction where the court has affirmed a public action, a law, a regulation that affects a commercial transaction wholly outside of the State. And given the lack of authority on that topic, that there's no risks and benefits that a public official would need to weigh. It is, as we said in our brief, simply a question of a public official looking at a map of the 50 States and seeing whether the transaction falls within California or falls without California. And for that reason, we believe that the district court should be affirmed, that the injunction, preliminary injunction should stay in place, and that the qualified immunity defense was properly dismissed. Thank you, counsel. Thank you. We'll hear rebuttal. Daniels has oversimplified the wholly out-of-State question. Here, appellants are not on notice that their actions were violative of the Dormant Commerce Clause. As Judge Gould pointed out, the Supreme Court has cautioned against defining clearly established law at a high level of generality. And so it's not simply enough to say that the extraterritoriality doctrine was clearly established. It's whether or not it was clearly established, the particular circumstances in this case, and in terms of the facts in this case under review. So looking at the question of nexus, again, taking into account that these cases fall on a spectrum, right, with San Francisco on the one end where there was no nexus, and Valley Bank and Gravquick on the other end, it would be very difficult for an official to know that their actions with respect to California waste that has so many nexus points to California itself would be violative of the Dormant Commerce Clause. It certainly does not fall into the San Francis case law where there was no nexus. So given that California has this cradle-to-grave approach with respect to its waste, an official would not have been unnoticed that their particular actions in this case were violative of the Dormant Commerce Clause. Second, Daniels has said that the Medical Waste Act doesn't matter, but it does because the appellants were applying the Medical Waste Act and its requirement for incineration. And as we said earlier, the Medical Waste Act has not been interpreted in the 27 years of its enactment. And so where the act requires incineration, a public official acting in good faith must assume that the law is valid, especially, again, given that there was so much nexus to California. Finally, Daniels cites to Carbone, which is not applicable here because in that case, there was a Commerce Clause violation for discriminatory law. And the interest there plays a role versus it's not really part of the key inquiry. Here, the key inquiry is whether or not this was commerce occurring wholly out of the state. And as Daniel has admitted in its own answering brief, it would be very difficult for an official to do the balancing inquiry involved in determining, you know, what California's interest was. But it's not, but that's not a factor in the wholly out of state, in the question of whether or not this conduct was wholly out of state. It should also be noted that Daniels also interpreted the law as such until 2014. They were incinerating their waste for years, believing to be complying with the Medical Waste Act. So an official would also assume and would not be on notice that their actions were violative of the Dormant Commerce Clause. In conclusion, appellants respectfully request that this Court reverse the district court's order to find that appellants' actions in enforcing the Medical Waste Act did not violate the Dormant Commerce Clause and that appellants are entitled to qualified immunity. Thank you. Roberts. Thank you, counsel. Thank you both for your arguments today. The case just argued will be submitted for decision. Thank you.
judges: Fernandez, Thomas, Gould